Good afternoon. Next case is number 22-3033, United States v. Roderick T. Long. Mr. Kokos. Thank you, Your Honors. I'd like to reserve three minutes for rebuttal, if I might.  A.S.A. Donna Kokos on behalf of the United States. I want to begin with a point that the district judge made that dismayed me when I saw it. And I really just can't get it out of my mind, even rereading the briefs. And it's in the course of justifying his decision not to review the child pornography, the district judge said every viewing of child pornography re-victimizes the child victims. And it's disconcerting because if the judge really believes that, then he believes that our agents who are tasked with investigating these cases, who look at the child pornography to try to identify the victims, to help get them out of their situations if we can, or at least make them eligible for restitution if we can't, that they're re-victimizing children. And it implies that the attorneys on both sides, we in the course of deciding what charges to bring and what sentencing enhancements might apply, when we review the evidence and when defense counsel reviews the evidence to determine what defenses his client might have, that we're all re-victimizing children. It seems like a minor point, but I think it's maybe the key to the entire decision-making process of the district court here. Because if the district court really believes that, then this judge is never going to be comfortable looking at child pornography. All right, well, let's assume that he doesn't really believe it and it was a misstatement. You're not suggesting, are you, that that misstatement alone is a reversible error? No, I'm not. No, no. What's the reversible error? Well, the reversible error in this case, a couple of them. The main one is when the district judge refused to examine the child pornography in the course of conducting his Rule 403 balancing. The Cunningham case indicates that the district court should examine the evidence. There are clearly exceptions that it didn't enumerate, but it should examine the child pornography before deciding whether or not to admit it. Yeah, and we don't really know what those exceptions are, if they exist. The district court here did make a finding that, in his mind anyway, it was obvious that this was not necessary. What was mistaken about that? Is it your argument that obviousness can't work ever or that obviousness doesn't work on the facts of this case? I'd be even more specific. Obviousness doesn't work when the district judge never looks at any of the images. Well, I fought that for a while, but now I'm reconsidering because what if the description said something like, we have a video of, let's say it's a man act case, okay, and a teenage girl has been kidnapped, brought across state lines, and what if the description says that there's a stipulation that the kidnapping occurred and the description says that after she was brought across state lines, she was dismembered with a chainsaw. Couldn't that be obvious enough that that description sufficed, that the judge wouldn't actually have to look at the video? Well, then you look back to Cunningham because when Cunningham made its decision, the premise was that some child pornography in a child pornography possession or production case always would come in, and the way Cunningham got around Old Chief was to say, yeah, the government's entitled to present its evidence, but you may reach a point of diminishing returns or cumulativeness. So it's uncomfortable, but our position is that if we had, let's say, hypothetically, we indicted a defendant on one image only and it's the worst of the worst, that does have to come in. Well, that's your evidence of the case. It's our evidence of the case. Now, in the case of, you know, what Your Honor just described, maybe it would be possible to edit the actual video so it didn't show the extraneous dismemberment that you described. I mean, I don't know. We would have to take that when we came to it, but in Cunningham it does seem to say that the government is entitled to introduce some evidence. It even went so far as to say we won't try to identify a set number of images or videos, but some was the implication. It was never implied that the defendant could stipulate at his way out of all of the images in a child pornography production or possession case. So I think what Cunningham said is before admitting evidence, the judge must review the evidence, right? So where does it say that the judge must review one or more images before excluding? Well, at one point I think it said before deciding upon whether. I mean, I think it was more agnostic as to whether it was admitted versus, you know, refused. But I would just put it this way, Your Honor. I think what the judge did here was essentially say, well, it's my predisposition to exclude the evidence and the description makes it clear to me that the evidence must be much more prejudicial than probative just given how the words strike me, and therefore I'm going to exclude it without even looking at it. So let's assume for the moment that you're correct that the judge must look at at least one image. And let's say that the government says, I want to put in 20 images. Does the judge, in your view, need to look at all 20? Or is there some point after which the judge can say, anything further will have such minimal marginal value that I'm not even going to look and it's out? Absolutely, Your Honor. And I think Cunningham makes that with the diminishing returns argument. I think what Cunningham says is, implies at least, is that after we've offered and the judge has examined some images, let's say we have a video and let's say we have some still photos, there will come a point where any more than that is just saturation and may be more unfairly prejudicial than probative. And obviously there can't be a bright line drawn, but at some point that will happen. And so what I'm contemplating is the judge has to look at some images, but when he or she finds, okay, this is sufficient, obviously that would be an example of a case where it's obvious the judge doesn't need to look at more because there's enough. So what if, you know, and charging someone with possession of this material involving a child who hasn't attained 12 years of age, what if the government were to propose four exhibits and the very first exhibit that the judge looks at is an infant and it satisfies the definition of sexually explicit conduct, then could the judge look at one and say this satisfies it, I'm not looking at any more, the rest is out? Now that I don't think so for the following reasons. I think we should, if the defendant has, let's say the defendant has, as they often do, still photos and then they have videos, that's usually a typical thing. The last case I cited in my reply brief says the government doesn't have to limit its presentation to just images if the defendant had both. It should be able to at least offer both types. If the defendant has this stuff on multiple devices, maybe then you also can offer some of the images or videos from multiple devices. So it's hard to draw a bright line, but it seems like more than one but fewer than all, fewer than very many after Cunningham. Let me back up a little bit. Why should the government be able to offer both videos and still images? Because that's what the defendant possessed because it's the crime. Okay, but where in the statute is there a distinction between still images and videos? There is not in the statute a distinction. So you could also say, well, he possessed 500 videos, so therefore we should be able to present them all by that logic, right? No, just some. Some or at least a montage. What we've done since Cunningham, Your Honor, is we've tried to create a montage that, like we did in this case, that really condenses down a representative, not the worst of the worst, the defendant possessed, and put that before the jury along with a handful of images if he or she had those. That's what Cunningham seems to say we can do. But your questions are apt. I mean, I've been racking my mind trying to think on a remand what the district court might do, especially if he doesn't want to view any of these. And my concern is that he might decide, if Your Honors let him do this, to just admit one image, pick one image and go, that's it, I've seen enough, so will the jury have. Counsel, let me follow up on that and ask you a question. If we agree with you that the district court erred in failing to review the evidence, is it your position that we should remand for the district court to consider admissibility, or do you think we have what we need in front of us to make that determination? You could do either. I've given you the images so you have the option. I feel bad about that because in my heart I think this is the district court's responsibility to do this. I think if Your Honors do it, you have to be very clear with him what it is you expect him to do. So to condense this further, our problem at the government's problem is as follows. The district court in this case orders the defendant to say whether he's going to stipulate to an element, and the defendant does. And then the district court orders the parties to draft a joint description, which we comply with that order, not because we agree with it, but we are complying with court's orders. And then when the judge got that and issued his 403 order, he called that joint description a stipulation. That just strikes me, to me a stipulation is an agreement, and an agreement is voluntary. Us following a court order is not an agreement that that's the right course of action. And we did assert that objection afterward. So that's what I mean about this case being nerve-wracking is I'm trying to see around corners and imagine ways that the district judge might just admit the minimum. And I have to confess I can't see a bright line that could be drawn that would be fair for defendants in all cases just because of what the district court's approach has been here. Well, and isn't it true that there can't be a bright line answer to 403 problems because the very nature of abuse of discretion review presupposes that the judge might let in a couple too many or a couple too few that is optimal, but yet still be within the realm of discretion. That's right. And, in fact, if we remand this case without opining as to the admissibility of the evidence you've put before us, there's a chance that the judge would let in all of it, some of it, or none of it after the judge looks at it. Right? And depending upon what the judge would determine would dictate whether we end up back here again. Yes, although I would just one caveat to the very end of what Your Honor just said about admitting none of it. We don't think that's an option because, look, we complied with Cunningham by curating this stuff down to a selection of the many hours and many images that he had. I don't think it's fair for us if the district judge could go back and look at the one video and the four images we offered and go, yep, it's just as unfairly prejudicial as I thought. None of it comes in. Now we're back to written descriptions. I don't think that can be the case. I think then the judge has to send us back to the drawing board to propose other images, another video montage. We have to keep going until it's solved. So does that mean that if you were to prevail here and we were not interested in what some would argue is a usurpation of the entire playing field of evidence is open for discussion between you and your friend on the other side? We just sort of go back and start at ground zero? Absolutely, yes, absolutely. The restart point isn't your curated evidence. The restart point is the corpus of evidence from which people need to agree on what's properly admitted and not admitted among the corpus of evidence. Exactly, because any other way and then we've been penalized for complying with Cunningham's direction that we try to curate this stuff. The last thing I'd mention, though, is I'm not urging your honors not to look at the evidence and make the call yourselves. The reason I offered it to you so you could if you decided to, and I could see a benefit to district courts if your honors did that because you would illuminate just why you think the video we've offered and the images we've offered are or aren't more unfairly prejudicial than probative. We have the ability to do that. The problem is, at least not speaking for my colleagues, but the problem I would have with that is I'm putting back on the district judge hat I took off a long time ago. Even if we could do that and we could do it very well, isn't there a question as to whether it would be proper for us to do it if, in fact, it's the province of the district court? Because we are a court of review, not first view. Well, I agree, but I think that is exactly what happened, though, in Cunningham and maybe Heather Lee talked about this, which is that when the district court doesn't do the 403 analysis, you can do it de novo. Yeah, so the difference here is that there hasn't been a trial, right? So we're not looking at a fixed record where we know exactly what the jury saw and what the jury instructions were and everything else that factors into a district judge's decision. So we're not here doing, you know, even if we were to say that there was error, we don't have to make a harmless error decision. We can send it back and say, do this over. That's right. And that's a fair point, Your Honor, and that might be the most direct way to do it. It respects the district judge's prerogative. My view was just that he sort of, you know, waived that by refusing to look at anything, but I think what you're proposing is maybe the better solution. So I just want to unpack something you said a few minutes ago. You said that if the district judge were to look at all the images and say, now that I have seen them, I conclude that they are all more prejudicial than probative, I'm not going to let any of them in. You said that would be improper. Are you saying that that is per se improper because he's not excluding any images or that we would give him deference, give his 403 analysis deference because there was no procedural error? Well, let me stop right there. Would you say there was no procedural error there? I would say, would I say there's no – yeah, I would say there's no procedural error as long as he's looking at the images, yeah, and then giving a principle ruling. So if it were to come back to us and we were to assess it for a substantive error, is your position that it is per se substantive error to admit all images? To – you mean exclude? Exclude all images. Yeah, I would say it is because of Old Chief at that point because then we're dealing – you remember when Old Chief articulates the rule that the government can't be forced to stipulate away its evidence. You know, it's – 922G is a strange statute because the element that's at issue there has nothing to do with what the defendant thought or did. It's a felon status. Status, not evidence. Yeah, it's a status and after Gallman, knowledge of same, right? But it's not anything to do with what he did in the instant offense, whereas here the images are everything to do with what the defendant did. It would be like saying that we can't show, you know, an evidence. Where would this end, right? Could we never show a gun if a defendant possessed it or drugs if a defendant possessed them? I could think of arguments in favor of that if we went down this road here. It seems like that could be overly confining in a hypothetical case where it just may be that there is no evidence that wouldn't be unduly prejudicial, right? I mean, not even this case. But like, you know, it seems like a district judge might say, well, let me do that 403 analysis without this opinion that says I must allow in one or more images. Well, I just don't see how in the case of this particular kind of evidence where the evidence is the crime, it has multiple utility. It's not just, you know, the defendant doesn't just stipulate. He just stipulates in this case that it's child pornography, but this is useful to prove, you know, his knowledge of same, the ages of the children, his interest in children, his motive. I mean, that's a huge distinction with the exception in Old Chief. And so I just don't know how, short of a defendant stipulating to all of the elements, in which case that would be a guilty plea, then I don't know how you keep out the evidence. And then, Your Honor, in Your Honor's hypothetical, is Your Honor presupposing there would be a written description in lieu of the evidence again? Sure. Yeah. So let me put it to Your Honor like this. Suppose we did that, and suppose the defendant, he doesn't, say he stipulates as child pornography, but we go to trial, and his, I tried to think of any element that might not require a jury to see the images, and I couldn't in all cases, because even interstate commerce, sometimes let's say it's just printed out and we can't show where it came from. Sometimes you can tell from stuff you see in the background. You can tell from the ethnicity of the children. Sometimes you can tell from the fact that we've, our DHS has identified certain children as living in different states or in different countries. In those instances, the images would be critical to interstate commerce. So what I hear you say, and just picking up on the same thing that Judge Friedman picked up on a moment ago, is there is no scenario in which all the images of CSAM could be excluded under 403. What's the case that you think best articulates that? I think it would be Old Chief. I think it's the general rule in Old Chief. Old Chief's an exception. Yeah, Old Chief articulates the exception. The rule is the plaintiff, the prosecution, gets to prove its case as it sees fit. Right. And the judge has to exclude under 403. Right. And Old Chief says, wait a minute, we're not going to let you tell the jury that this guy's a felon when he's stipulating that he's a felon. Exactly. Because the only reason you want to tell the jury he's a felon is because you want to tell the jury he's a bad guy. Exactly. You want them to get into the dirty details of whatever else he did, and that's confusing and it's unduly prejudicial. That makes sense. But here, this is, you know, I called this contraband per se, but you could call this res geste evidence or corpus delecti type of evidence. Like it is, unlike any other crime I could think of that we charge, this is the crime. So it would just be, look at it this way. If you're on a jury, could you convict a defendant based only on a written description of images that we're accusing him or her of having possessed? Bearing in mind that these defendants in the federal system can go away for decades if you convict them. Bearing in mind that if you convict them, they can be on sex offender registries for the rest of their lives. Can you do that based on a written description? I submit to you if you can, if I'm the defendant, I don't want you on my jury, right? And if you can't, then I think you're being a reasonable juror who is viewing this stuff, not because they want to, but because it's part of their job when they're impaneled as jurors. Thank you, Mr. Kokos. We'll hear you on rebuttal. Mr. Morris. Good afternoon, Your Honor. May it please the Court, Calvin Morris on behalf of Appellee Roderick Long. Your Honor, the district court exercised proper discretion in excluding the images in the instant case and in lieu of that, using the written descriptions. Your Honor, the district court painstakingly went through a nine-page opinion outlining his analysis, thereby showing the thoughtfulness given in the instant case. The judge, in terms of what is also a factor of this, there's also a 404 notice that the government had filed in this case, just additional evidence of Mr. Long's previous convictions and so forth. During the time of my representation, about six months leading up to the trial, I had been terminated about three times by Mr. Long. The district court was well aware of this. There were several times whereby we had to have status conferences to address this. At the last one, Mr. Long indicated that he wanted to proceed pro se. At that time, the district court did a phoreticology, and after about an hour, Mr. Long decided he did not want to represent himself. Your Honor, I give that background because of the delay and the timing of actually watching these videos. When we did actually watch the videos, I watched them with AUSA's Block and Moton, along with Corporal Brown. Your Honor, when I say that the four of us are in that room, the U.S. Attorney's Office in Pittsburgh, and all of us are flinching. Nobody can look at these videos, even the government attorneys. They are as bad as they are described. And so our point is, my thinking is, why do we have to show these videos if there is an accurate description of what the videos show? Would you agree that there was not an accurate description of the video montage? Again, that was a year ago when I watched that montage. I felt like the representation that was provided in that summary was accurate. If we determined that there was not an accurate summary of the video montage, do you agree that there is a procedural error, that the court committed a procedural error in admitting that video without an accurate description and without viewing it? I mean, excluding it, I'm sorry. Your Honor, I don't think there would be a procedural error in that because the representation to the court was that it was accurate. So the court took counsel at face value that it was an accurate representation, relying on that. So therefore, I don't think it would be a procedural error. It's not something that the district court did. It would be something that counsel did in terms of the description. So, sorry, this is challenging because, you know, the district court, I think, very clearly instructed counsel for both sides to try to come up with a joint description of the proposed exhibit, the exhibit 30, the video. But the written description says exhibit 30 is a one-minute, 25-second video montage of four excerpted videos, and then it goes on at length to describe these much longer videos. And so I'm not seeing anything in this record that provided the district court with the information it sought on what exactly are you trying to put before the jury. I think it is a tell me in your words, counsel, what's going on there. So if we take that, you know, if you assume just for the moment that it is just describing the longer videos and not the 85-second excerpts, would there be a procedural error then? Your Honor, I think I'd still say no. I still don't think there's a procedural error, again, because as the lawyers sat down, we watched the videos and the description was written. I would calculate that error to the drafting of the document. Again, I did not draft it. One of the AUSAs drafted it. But, again, I did read it and sign off on it before it was ultimately submitted to the court. But I think that's something, again, with the lawyers in terms of saying what the accuracy was. But, again, we spent maybe an hour or so going back and forth about the descriptions and what it would be. And, again, as I indicated, I think in my brief, it's only one description that I disagreed with, and it was the age of a child. I believe that the U.S. Attorney thought that the child was three. I think I said five or six. I think we ultimately agreed on four. But the descriptions are accurate, and any error in that would be just the drafting of it. Mr. Morris, I have no doubt that you're quite correct when you talk about the revolting nature of the evidence that you and the others had to watch, but I'm often thinking about what the word unfair means in the phrase unfair prejudice. I'm going to give you a hypothetical and suggest that it can't be the law that the following evidence would need to be excluded. If somebody were to walk into a crowded place with a GoPro recorder on their head and gun down ten people, is it your position that it would be unfairly prejudicial for that video to be shown to the jury in a multiple homicide case? No, Your Honor. And that's about as disgusting and atrocious as it gets, right? I mean, I'm sure we could think of worse things, but that's about as bad as it gets. And I assume the reason that you conceded, I think rightly so, that that would not be unfairly prejudicial is because it's the actually killed these people, and the government would try to prove that by tying the forensics of the GoPro to his computer and the gun that he had and show it to the jury, right? So why isn't this case the CSAM version of the hypothetical that I just gave you? Yes, Your Honor, and great question. And, Your Honor, what I think is that the difference is, is there's violence on our televisions every day, whether it's the actual wars that's going on or if it's one of the multiple multitude of criminal shows online, I mean, on video. Your Honor, there is nowhere you can go legally and watch child pornography. You cannot go anywhere and see children engaging in sexual acts. You can turn on any television and see someone being murdered. Well, but you can't legally, can you? I don't know. I hope not. I hope you can't turn on your TV and legally watch homicides. Can you? Your Honor, as graphic as some of these shows are, I argue that it's... You know, it's make-believe, though. It's a dramatization. It's not the actual homicide, right? But I guess what you're saying is that because people don't see Sam on their TV, it's a different category of shocking, I guess. Is that the argument? I think, Your Honor, our society has just been desensitized to violence, okay? But in terms of... But not violence against children? Your Honor, anything with children just sparks anger and rage, I think, in a lot of people. And again, as defense counsel on the case and with the U.S. attorneys, we're watching this stuff, Your Honor, and we're all disgusted by it. And my point is... Yeah, again, I think what you say has a lot of factual currency with me. But my concern is that it almost is inviting this court to create an exception that let's call it the heinousness exception. The more heinous the crime, the less able the government is to actually put the evidence of the crime to the jury. See my concern? Your Honor, I see your concern, but in terms of admissibility of evidence and these particular cases, there's no cases like this, Your Honor. I have, as a trial lawyer, I've done homicide cases and I've done sex assault cases against children. And I can tell you when you go into that jury room, and I know Your Honor is well aware of this as a district court judge in trying cases, but when you go in front of the veneer and you say the type of question, the case it is, if it's a homicide case, oh, people are intrigued by that. You know? It's as bad as it is, people are intrigued by that. But the minute you say this is a case that involves a child victim, the hands just start raising because people are saying, I can't be fair with this. And then there's other people, the people that don't raise their hand, they're still sitting there questioning themselves, can I really sit in and listen to this and be fair? Because, Your Honor, there is no case like a child sex case. Let me ask you a question. You just talked a little bit about your own experience. And I'm curious in your experience or in preparing, you know, to argue about this in front of the district court or here, have you identified other cases where the government wasn't permitted to introduce any images of the CSAM material in a trial related to the same? I have not, Your Honor, that I can recall. But what I did do is look at Cunningham and a host of these other cases. And again, I know the district court in those instances displayed or, you know, allowed these documents and images to come in without first reviewing them. In the instant case, the judge had the full description of the items. There was a description of Cunningham, too, though, right? It was, Your Honor. In Cunningham, if I could butt in, Cunningham didn't say it all goes out. Cunningham identified the couple of particularly crazy sadomasochistic bondage-type things, right? Correct. Which sort of presupposed that the error of the district court wasn't letting all of it in or some of it in. The error was letting all of that stuff in. It was really too much. It was unnecessary and too much. Correct. Which suggests that you have to let some of it in. Well, Cunningham also hinted at there will come a day, I submit that day is today, where evidence is excluded and you don't have to view the videos. In this instance, I think the trial court, again, in his nine-page opinion, he outlined all the reasons for not watching the video and then for excluding it from trial. But to Judge Montgomery-Reed's question, this would be the first case. You're asking us to be the first court to say that? Yes, Your Honor, it would be. So setting the video aside for the moment, why would it be unfairly prejudicial if the district judge allowed just one of the still images in? I think it would be unfair because when you have that option, you have an option of a written description that accurately portrays any video or any still photo, and there is no discrepancy between the parties in terms of what is actually in that video. I think that's why it should be. That sounds like you're saying it would be unnecessary. But that, I think in order to be excluded under four or three, it would have to be unfairly prejudicial also. So just one image, one of these four images that involve just a child, no adults, no penetration, and a child under the age of 12. Why would that be unfairly prejudicial given the volume of evidence that the government seized in this case? I'm sorry, Your Honor. I think I misunderstood your question initially. But no, there are instances where I do think photos are appropriate. I'm just saying in the instant case with the ages of the children and the accuracy of the provided descriptions, I just didn't think it would be unfair to submit those. I want to make sure I understand. If we agree with what you're saying, we would be writing an opinion that essentially says no CSAM images would be admitted in a case that the children were extremely young and the descriptions were accurate? No, Your Honor. Again, I think it's who was talking about the other volume of evidence that the district court considered in making his final decision. So I talked about the 404 notices coming in of prior convictions. Talked about a previous counsel in this case had filed a suppression motion which was denied. So Mr. Long's statements are going to come in as evidence as well as a number of other pieces of evidence that are going to come in. It's a bit overwhelming in terms of what the district court understood when making his analysis about whether or not to bring this evidence in. Any further questions, Your Honor? Yeah, before we let you sit down, Mr. Morris, could you address the issue of if this goes against you in terms of a decision regarding the judge's failure to look at the evidence, I know that's not what you want. But if it does go that way, what's your argument as to whether we should make a decision regarding the admissibility of the video and the photos at issue as opposed to not touching that issue? Yes, Your Honor. Your Honor, again, I think the district court is best able to make that decision after watching the videos. So I would think that the best course would have to remand the case to let the district court make that analysis again. I think it's for this court to take that extraordinary action. I don't think it's necessary at this time. And could you address what I asked Mr. Kokas about what that would entail if we don't make any normative judgments about the admissibility of the evidence on remand? Would you and opposing counsel have to sit down and look at the entire playing field again or would it just be the corpus of evidence or would it just be focused on this video montage and four photos? Your Honor, I would think that if the case is remanded to the district court that it should be limited to the montage and the four still images that were previously presented. I think, yes, that's what I think, Your Honor. Okay. All right. Thank you very much, Mr. Morris. We'll hear rebuttal from Mr. Kokas. So I just want to clarify the balancing the district court did under 403 had the following. On the side of exclusion it had the stipulation to the element, the one element the defendant stipulated to, and then also the joint descriptions that the court had ordered the parties to draft, which the court then transformed into a stipulation. It put those on one side just I think because of Cunningham's statement that if there's a stipulation you put that into the 403 balancing. And then on the other side it put all the images but then never reviewed the images. It's our contention that the way the balancing should occur is I have no problem with putting the defendant's stipulation that this is child pornography, that's fair play, on this side of the balancing. But the joint descriptions shouldn't go anywhere in this. Nothing in Old Chief or anything else says the Old Chief involves a stipulation to an element, a dry element. This is a stipulation that the joint description the court turned into a stipulation that purports to describe the evidence. That shouldn't have been on the scale. And it didn't describe the montage at all. Yeah, it described it. It made clear that it was describing the longer source videos. And the reason we did it that way was remember we don't know the court is contemplating not viewing the exhibits. And we don't know the court is contemplating maybe admitting the actual written descriptions in lieu of anything. So we are trying to accomplish several things at once. We're trying to comply with the court's order by drafting that. We're still trying to persuade it, look, Your Honor, look how much we have winnowed out as Cunningham tells us to do. And then in the end, then we're trying to show, give the court a sense that this is representative of the stuff in his collection. So that's why it's drafted that way. It wasn't intentionally inaccurate. And I don't know that the district court thought it was because then it just ruled the descriptions would come in. And it's our position that it's just not unfairly prejudicial ever to say the defendant must be confronted with some of the evidence of this crime. Not all, you know, after Cunningham, not all of it. After 403, really. I mean, the cumulativeness, the diminishing returns, we get that. We're not looking to pile on. But we should be able to give some of the images just because the immediacy of them is so far incomparable to the, you know, the dry written descriptions. And because often when, you know, a defendant's defense will be, well, I didn't know that was on my phone. Or I didn't, you know, I bought that device and it must have already been on it. Well, like we need to be able to show just one glance at this stuff and you know that that's bad stuff. Right. So, you know, these are proving things now far beyond just the elements. This is, you know, state of mind and everything. This is, you know, what a reasonable person would have known. So that's what we're asking the court to do. And just make clear that some images should come in. You don't have to say which. You don't have to say it. You know, you don't have to say anything more than Cunningham said other than whether or not you're going to exclude or admit the evidence. You must review it and review it until you decide how many images, how many videos come in. That being a few. But it can't be none because otherwise you've rewarded defendants for having the most, you know, disgusting, despicable contraband. So. In your trial brief, you said that you had to prove, the government had to prove that at least one of the children in the images hadn't attained the age of 12. Is it necessary given Mr. Long's prior conviction? Is it necessary giving his. Yeah. For the sentencing enhancement. Yes. Because the statute allows for, you know, someone under age 12 allows the stat max to go up to 20 years. Right. But a prior conviction also does the same and it imposes a mandatory minimum. Right. So why do you also need to establish age? Well, just because now we're just looking in terms of the charge defense. So, yeah, you're right. For sentencing, you know, maybe it doesn't make a difference. But for the charge defense, you know, we charged it under both the substantive offense and then the sentencing enhancement. And so we thought the jury needed to decide that issue, too. We at least have to offer evidence, even if the defendant doesn't dispute it, even if he, you know, we have his prior conviction out there. But we at least have to offer evidence to meet all the elements of what it is we charged. If we hadn't charged that in the indictment, I think Your Honor might then have a point about that. And, you know, when you wrote the trial brief in this case, that was before Mr. Long stipulated that the images show child abuse. I don't know the timing because I didn't write that. I wasn't the one who wrote the trial. But I think that sounds right to me. That does sound right because that for sure the stipulation came later because the district court was sort of putting the bug out there for a while. So when you have a stipulation, so my understanding of it was that the trial AUSA had no stipulations, submitted the trial brief, and said, look, we have to prove all of these things, including that this is child sex abuse material. And then the defendant said, I agree that, you know, that six-factor test applies here. This is lascivious and so on. So when you have that stipulation, which Cunningham says is a relevant factor in the balancing, why is it necessary to show multiple videos of penetration? So, yeah, so I see your point there. So that stipulation, though, is just that this stuff is child pornography. It doesn't stipulate to any of the other elements that we have to prove. And then on top of that, the jury can take or leave the stipulation. That's the sort of, I can't call it defect, but it's the unfortunate thing about the Third Circuit model instruction is it makes it clear the jury can take or leave it. And the other thing, this is an atmospheric thing, I didn't notice until preparing for this, but the very last sentence of the model instruction in the note says to a district court, by the way, before getting a defendant to stipulate to an element of the offense, you really might want to bring him or her in and colloquy them. That's how serious that is. And I think this is thinking ahead to habeas at this point, because I have no doubt that Mr. Long told his counsel, okay, stipulate to that. But the point is, you know, the district court didn't do any of that here, so now we're just left with a stipulation that is attorney drafted, which legitimately goes on the scales. I have no problem with that. But then the written descriptions, that's really the crux of our problem, is the written descriptions didn't belong on the scales. Written descriptions should not be shown to the jury in lieu of the evidence. Okay. But even if the four still images came in, let's say some video, some amount of video came in, what additional, like, how does it help prove your case to show multiple video clips of small children being penetrated? So is Your Honor asking, you know, so we're offering this much video, and how does it help us? Yeah. You know. Right. I mean, so the district court's going to have to do a balancing test. Yes. That's what 403 is. Okay. So they're not just going to say, yes, we're allowing all your evidence in, or we're allowing none. Right. Let's assume that there's going to be some balancing then. Yeah. Like, what is the basis for having all of those video portions? I think just because they were representative of what the defendant possessed. But as I understand your question, Your Honor, yeah, I think a district judge could look at a video montage and go, okay, here's a 30-second montage. I think, really, 24 seconds of it are okay, but there's six seconds of it that's beyond the payoff. I think a district court could do that. I don't have a principled basis for saying that he should do that in this case, but, I mean, I think that's always possible. Well, it's easy to think of one, isn't there? If what you're really wrestling with is proving knowledge. Yeah. If what you're afraid of is defense counsel is going to get up and argue to the jury, hey. Yeah. You know, there are a lot of times where somebody gets, you know, in a certain dress or certain makeup or whatever, where they appear to be a lot older than they are. Yeah. And my client didn't know these people were minors. Right. But if the video clip is 30 seconds and the video clip shows the child, face, body, size, and there's no penetration until 24 seconds in, a district judge could easily say, well, look, the reason you want this. I think these are the things district judges do and should do, right? Right. They should ask the lawyer, look, this looks really, really crazy toward the end. Do we really need the part at the end?  And puts the burden on you to say, judge, yes, we agree it looks crazy the last six seconds. Yeah. But I need to prove thus and such. Yeah. And the last six seconds of this video helped me prove thus and such. But to Judge Freeman's question, we're just talking about knowledge of the child's age. Yeah. The child looks the way the child looks regardless of whether the child is being penetrated or not. Right, right. Correct? That's right. Yeah, but like usually in many of these cases, penetration or some sexual, I mean, that's what makes it child pornography, right? Well, that gets into you responding when the judge puts you to the test. Why do you need to show this? You better have a good answer for that. Exactly. We better. And just one other point to one other point Your Honor just made, which is now we just prosecuted a case where AI was used to take the bodies of actual victims of child pornography and videos and morph the faces of child Disney actors onto those. It's getting harder and harder to tell what's real from what's not real. And what's disconcerting is the Supreme Court has said that simulated child pornography. Hashcroft. Yeah. It said that that's okay. So we do have to, you know, we have juries who are who really want images or videos of any crime that we're charging, even when it's not reasonable to expect it. And so in a case where a video or an image is the crime, it's the jury is not going to know that we were dragged into a stipulation. For all the jury knows, it was the government's idea and that we're doing it to conceal defects in our evidence. So, you know, all of that is sort of there. It is a weird world we find ourselves in where after Cunningham, we've sort of we have to become editors of child pornography. It's just it's not why I went to law school. I don't think. But here we are. We try our best and we just don't think it's unfair to confront a defendant with some of what he's possessed. And if it's awful, that's because the crime is awful. And this sentence is reflect that.  Thank you, Mr. Cocos. Thank you, Mr. Morris. We appreciate the very helpful argument and briefing. The court will take the matter under advisement.